UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PRESTON LEWIS,

    Plaintiff,

v.                                                      Case No. 3:22cv22608-MCR-HTC

BARRONS PROPERTY
MANAGERS, INC., et al.,

    Defendants.

_____/

REPORT AND RECOMMENDATION

Plaintiff Preston Lewis, proceeding *pro se*, has filed an amended complaint, seeking to assert claims for discrimination and retaliation under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq*.[1] ECF Doc. 11. Before the Court is Defendant Barrons Property Managers, Inc.'s ("Barrons") motion to dismiss. ECF Doc. 12. Barrons is the only Defendant who has been served. Upon consideration of the motion, Plaintiff's opposition, ECF Doc. 14, and relevant law, the undersigned recommends the motion be GRANTED. Additionally, for the reasons discussed

---

[1] Although Plaintiff also references the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq*., and section 504 of the Rehabilitation Act, those claims lack any merit. The Court previously advised Plaintiff that the ADA is not applicable to his claims. ECF Doc. 10 at 12. Likewise, section 504 of the Rehabilitation Act only applies to "recipients of federal financial assistance," *see Bragdon v. Abbott*, 524 U.S. 624, 632 (1998), and Plaintiff has failed to allege any of the Defendants receive such funds.

below, the undersigned recommends the claims against all other Defendants be DISMISSED *sua sponte*.

## I. BACKGROUND

Plaintiff sues Defendants for their alleged failure to address Plaintiff's complaints regarding the availability of parking spaces and maintenance requests at his apartment complex. None of the complained of conduct, however, is sufficient to support a claim for discrimination or retaliation under the FHA, no matter how liberally the Court reads Plaintiff's allegations.

When Plaintiff initiated this action, he sued only Barrons, the property manager of the apartment complex. ECF Doc. 1. Barrons moved to dismiss the complaint for failure to state a claim, ECF Doc. 7, and the Court gave Plaintiff an opportunity to file an amended complaint. ECF Doc. 10. In doing so, the Court advised Plaintiff that the facts alleged did not support the elements of his claims. However, instead of addressing the identified deficiencies, Plaintiff's amended complaint simply adds four (4) additional defendants: the prior property managers, Legendary Sales, Inc. ("Legendary"), and Eric Gleaton Realty ("EGR"); a Barrons' employee, Leanna Samay ("Samay"); and the owner of the apartment complex, Donnie G. Barnes ("Barnes"). Indeed, other than referencing a state eviction proceeding, the amended complaint contains no significant new facts.

The following relevant allegations are taken from the amended complaint and

accepted as true for purposes of this Report and Recommendation. Plaintiff is a "single Male of three daughters who occasionally stay[ ]" with him. ECF Doc. 11 at 4. He moved into a 10-unit apartment complex in September 2016, when the property was managed by Legendary, and signed a one-year lease. During the first week of residing on the premises, Plaintiff complained about windows not locking and bugs and cold air coming in through cracks in the window. In September 2017, Plaintiff's fixed-term lease expired and converted to a month-to-month lease.

In November 2019, before Legendary made any repairs, EGR took over management of the complex. Plaintiff told EGR about the same issues with his windows and EGR said "someone would reach out soon," but Plaintiff never heard back, despite a follow-up complaint. *Id.* at 5. Plaintiff also complained about plumbing issues, which were never fixed. Plaintiff's neighbors in Apartment C had the same plumbing issues in 2021 and reported that someone tried to fix it 2–3 times before plumbers were hired to dig up the septic tank. Plaintiff witnessed his neighbors' issues being fixed. Also, each time Plaintiff complained, EGR told him the rent would increase.

Starting in December 2019, Plaintiff's neighbors in Apartment C would, on some days, take up multiple parking spaces with their boats and vehicles. When the neighbors would have company, Plaintiff would sometimes be unable to find a parking space. Plaintiff complained and was told the situation would be fixed.

However, after the neighbors in Apartment C were told to move their cars and boats, the neighbors in Apartment A would take up the space. As a result of the parking and maintenance issues, Plaintiff refused to sign another lease with EGR.

In March 2022, Plaintiff again reported the same issues with the neighbors' parking. Plaintiff was told Barrons had taken over management of the property and he should contact them, which he did. Barrons told Plaintiff it was getting information from EGR and asked Plaintiff to take pictures of the issues and Barrons would investigate the situation.

After taking over management of the complex, Barrons "took action immediately" by sending out letters to tenants about the parking issues and sending their employees to take pictures of the inside and outside of the apartments. *Id.* at 10. Barrons sent someone to fix minor plumbing issues Plaintiff was having "right away," and sent someone to look at the windows "immediately," although the windows were ultimately not fixed. *Id.* at 10. Plaintiff also complained to Barrons about his stove and was instructed to leave his contact information and to provide a time during which he would be available to be contacted.[2] However, Plaintiff did not answer the call when he was contacted because he did not recognize the number.

On September 15, 2022, Plaintiff reached out to Barrons via phone regarding

---

[2] Barrons used an online portal for the submission of maintenance requests, payments, and other documents. Plaintiff submitted the stove repair request through the portal.

the stove, the windows, and the parking. A Barrons' employee informed Plaintiff a contractor tried to call Plaintiff about the stove and new windows had to be ordered, which could take some time. With regard to the parking issues, the employee told Plaintiff he needed "to move around" until he finds a place to park and to take pictures of any parking issues. Plaintiff, however, responded "it wasn't his job and that he's not taking any more pictures because no one does anything about [them]." *Id.* at 13. The employee also informed Plaintiff that Barrons had sent him a rental renewal agreement and a rent increase notification via email on September 1 and September 14, 2022, that the renewal was due by 12 a.m. on September 15, and because Plaintiff did not return the renewal, his lease had expired, meaning that Plaintiff was expected to vacate his apartment by October 31.

Plaintiff denied having received either email. However, upon review of his email history, Plaintiff discovered he had two emails from Samay which he had not opened because they came from her personal email, which he did not recognize, and, thus, thought they were spam. Plaintiff asked whether he could come by the office and sign the renewal and was told he could not. The next day, Plaintiff received a note on the door concerning his discussion with the Barrons' employee, and two days later, he received "move out papers." *Id.* at 15.

Plaintiff, however, did not move out by October 31, 2022, and instead, filed the present suit. Subsequently, Barnes filed a suit for eviction in the Escambia

County Court. Following the eviction proceedings, Plaintiff vacated the premises. Six days after moving out, Plaintiff went to the property to check his mail and noticed new windows were installed in his former apartment and numbers were drawn on the parking lot.

## II.     LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint contains sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The Court reads Plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Twombly*, 550 U.S. at 555; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Additionally, as to the claims against the unserved Defendants, "a district court has the inherent power to dismiss an action that is 'so patently lacking in merit as to be frivolous.'" *Guthrie v. U.S. Gov't*, 618 F. App'x 612, 617 (11th Cir. 2015) (quoting *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d

524, 526 & n.3 (11th Cir. 1983)); *see also Davis v. Kvalheim*, 261 F. App'x 231, 234–35 (11th Cir. 2008) (affirming district courts' inherent authority to dismiss frivolous claims *sua sponte*). "A claim is frivolous if it is without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (citation omitted).

### III.   DISCUSSION

#### A. Discrimination Claims

The FHA prohibits housing discrimination based on race, color, religion, sex, familial status, or national origin. *See* 42 U.S.C. 3604(b). As the Court previously stated, to establish a prima facie case under section 3604(b) of the FHA, Plaintiff must allege facts establishing: "(1) he is a member of a statutorily protected class, and (2) he was not offered the same terms, conditions or privileges of rental of a dwelling or was not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination." *Patterson v. Uptown Square Apartments*, 2009 WL 10666354, at *7 (N.D. Ga. Aug. 14, 2009). Plaintiff's amended complaint, however, like his original complaint, falls woefully short of stating facts sufficient to support either element.

As an initial matter, Plaintiff has not alleged facts showing he qualifies for "familial status" protection. To qualify for this protection, Plaintiff must allege he

is a parent of a minor child *and* that the child is "domicile[d]" with him, that is – Plaintiff's residence is the child's "true, fixed, and permanent home." *See Estvanko v. City of Perry*, 2011 WL 1750232, at *4–5 (M.D. Ga. May 6, 2011). Here, Plaintiff alleges simply that his daughters stay with him "occasionally." This is not sufficient. *See Porto v. City of Newport Beach*, 2011 WL 2470128, at *6 (C.D. Cal. May 20, 2011), *report and recommendation adopted*, 2011 WL 2462555 (C.D. Cal. June 21, 2011), *aff'd*, 509 F. App'x 665 (9th Cir. 2013) (finding plaintiff was "not a member of a protected group within the meaning of the FHA," because he did not allege he was living with minor children at his residence).

Regardless, Plaintiff does not allege any of the complained about conduct, i.e., delays in repairs, parking in the wrong spaces, etc., was because he had children. In fact, all Plaintiff states in the opposition is that a Barrons' employee noted pictures of kids in Plaintiff's apartment and asked who they were – to which Plaintiff responded the kids were his and that they "stay with Plaintiff ***and their mothers***." ECF Doc. 14 at 6 (emphasis added). That interaction is far from establishing any discriminatory conduct or even animus. Instead, it further shows that Plaintiff's children were not "domiciled" with him. Thus, Plaintiff has not stated a claim for discrimination based on familial status. *See Thompson v. CRF-Cluster Model Program, LLC*, 2020 WL 4735300, at *11 (S.D.N.Y. Aug. 14, 2020) (finding plaintiff "has not provided facts that could plausibly support even a minimal

inference of discriminatory motivation with regard to [his] familial status" because he offered only "a conclusory assertion that his family . . . was discriminated against and treated differently than other families").

Even less supported is a claim Defendants discriminated against Plaintiff because of his race. Plaintiff does not identify his race in the amended complaint and does so only in his opposition.³ In fact, the only allegation Plaintiff makes in the amended complaint that pertains to race is that all his neighbors, other than one, were of Caucasian descent, and they had their apartments worked on and were able to park where they pleased. That allegation, alone, is not sufficient to show discrimination. *See United States v. Trumbull Metro. Hous. Auth.*, 2017 WL 4882438, at *5 (N.D. Ohio Oct. 30, 2017) (granting defendants' motion to dismiss FHA racial discrimination claim because "[p]laintiffs do not provide a factual predicate that establishes a nexus between [d]efendants' actions and [p]laintiffs' race" and thus "have not nudged their claim of discrimination because of race across the line from conceivable to plausible;" instead, plaintiffs based their claim solely on the a legal conclusion that discrimination must have occurred because plaintiffs are black and defendants are white).

---

³ In Plaintiff's opposition, he alleges that "nothing was said to the Caucasian neighbors but Plaintiff of African American descent was told to move around until he could find parking." ECF Doc. 14 at 4. That allegation is contrary to what Plaintiff states in his amended complaint, which is that Barrons sent letters to all the tenants about parking, and the tenant in Apartment C was told to move their cars by EGR.

Case No. 3:22cv22608-MCR-HTC

As the Court previously stated, to support a claim for racial discrimination, Plaintiff must allege race played at least "some role" in the actions of the Defendants. *Parrott v. City of Union Point Hous. Auth.*, 2008 WL 2302685, at *2 (M.D. Ga. May 29, 2008). Plaintiff, however, has not done that here. The amended complaint is devoid of any allegation showing any of the Defendants harbored any racial animus to Plaintiff. *See Sofarelli v. Pinellas Cty.*, 931 F.2d 718, 723 (11th Cir. 1991) (dismissing FHA claim for racial discrimination against the county and county sheriff, because "there is absolutely no evidence of racial motivation on the part of the sheriff"). There are no allegations showing that any adverse action was taken against Plaintiff because of his race. To the contrary, Plaintiff admits Barrons made repairs to his apartment *and* the fact that there was no assigned parking was an issue for everyone, not just him. Also, while Plaintiff claims EGR made repairs for other tenants, there are no facts regarding the circumstances that resulted in those repairs, such as how long the tenants may have waited, what repairs were made, how much they cost, or even how long those tenants may have been complaining. Thus, Plaintiff has not stated a claim for race discrimination.

To the extent Plaintiff is seeking to assert a claim for discrimination based on disability, such a claim also fails. The Court already advised Plaintiff that to support a disability claim under the FHA, he "must allege facts sufficient to show: '(1) he is disabled within the meaning of the FHA, (2) he requested a reasonable

accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the accommodation.'" *Belcher v. Grand Rsrv. MGM, LLC*, 269 F. Supp. 3d 1219, 1233 (M.D. Ala. 2017) (citing *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1285 (11th Cir. 2014)). However, as with his prior complaint, Plaintiff's amended complaint contains only references to the ADA and Rehabilitation Act and includes absolutely no facts related to Plaintiff's purported disability. Specifically, Plaintiff fails to identify what disability he has, if any; what reasonable accommodation he needed; whether he requested such an accommodation; or whether an accommodation was denied by any Defendant.[4] Thus, Plaintiff has not stated a claim for disability discrimination.

### B. Retaliation Claim

In Plaintiff's original complaint, it appeared Plaintiff was attempting to assert a claim for retaliation against Barrons for raising Plaintiff's rent and not renewing his lease. The Court told Plaintiff the facts alleged did not support such a claim. Nonetheless, in the amended complaint, Plaintiff alleges that all Defendants "tried

---

[4] Plaintiff's assertion—made for the first time in the opposition—that he has "lung disease," "mental disability," and "a heart problem," ECF Doc. 14 at 17, do not show he is disabled. *See Melnicki v. Scully*, 2020 WL 13598986, at *3 (M.D. Fla. Mar. 24, 2020) (dismissing a failure to accommodate claim under the FHA, because plaintiff made only conclusory allegations of being disabled and alleged "no facts from which the Court could reasonably infer [p]laintiff has 'a physical and mental impairment which substantially limits one or more ... major life activities" or "a record of having such impairment" or that he is "regarded as having such impairment," as required by section 3602).

to rent retaliate" against him and, also, Defendant Barnes retaliated against him by initiating an eviction action against him in state court. These claims fail as a matter of law.

In its prior Order, the Court specifically instructed Plaintiff that to establish a prima facie case for retaliation under the FHA, he must show: "(1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015)). Plaintiff was also advised that Barrons' conduct did not amount to retaliation, because Plaintiff's complaints did not constitute a protected activity and, in any event, Plaintiff had failed to allege facts demonstrating that Barrons raised his rent or failed to renew his lease because of Plaintiff's complaints. *Id.* at 13–14. Those same deficiencies continue to plague Plaintiff's claims and equally apply to the other Defendants. There are simply no facts linking any adverse conduct to Plaintiff's complaints; to the contrary, the facts show Plaintiff (1) chose not to sign a lease with EGR and (2) missed the deadline for renewing his lease with Barrons.

Similarly, there is no causal link between Plaintiff's filing of the present lawsuit and his subsequent eviction because Plaintiff was given notices to evict at least two months *prior* to the eviction suit being filed. *See* § 83.57(3), Fla. Stat. (requiring at least 15 days notice for a month to month tenancy); *see also Lawtone-*

*Bowles v. New York City Hous. Auth.*, 2014 WL 705272, at *3 (S.D.N.Y. Feb. 20, 2014) ("as a matter of causal logic, retaliation complaints must precede a defendant's allegedly retaliatory action").

### C. The Other Defendants

As stated above, instead of adding any new facts to support a claim under the FHA, Plaintiff simply added new defendants. To the extent Plaintiff seeks to sue these other Defendants for violating the FHA, such claims should be dismissed for the same reasons that such claims against Barrons fail.[5] Additionally, any such claims against Legendary are barred by the FHA's 2-year statute of limitations, as Legendary ceased managing the property in November 2019. *See* 42 U.S.C. § 3613(a)(1)(A); *see also Wood v. Briarwinds Condo. Ass'n Bd. of Directors*, 369 F. App'x 1, 4 (11th Cir. 2010). And any claim against Legendary for "not fulfilling their contract" is a state law claim and the Court should decline to exercise jurisdiction over that claim, given the dismissal of any federal claim. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.") (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)).

---

[5] *See Escobar v. Crosby*, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (noting dismissal of prisoner's claims against unserved defendants was appropriate for failure to exhaust administrative remedies, which was demonstrated by the served defendants' motion for summary judgment).

Case No. 3:22cv22608-MCR-HTC

Finally, the claims against Barrons' employee, Samay, should be dismissed because none of the factual allegations support any wrongful conduct under the FHA. It appears Plaintiff takes issue with Samay sending renewal agreements to Plaintiff using her email rather than using the portal, and he claims that is not "professional." ECF Doc. 11 at 15. Thus, Plaintiff makes only two allegations pertaining to Samay: (1) she was an employee of Barrons; and (2) she sent him two emails with information regarding his lease renewal. Neither of those allegations state a claim for discrimination or retaliation under the FHA.

Accordingly, it is RECOMMENDED:

1. That Defendant Barrons' motion to dismiss, ECF Doc. 12, be GRANTED and the claims against Barrons be DISMISSED WITHOUT PREJUDICE.

2. That this case be DISMISSED WITHOUT PREJUDICE *sua sponte*[6] as to the other Defendants.

3. That the clerk be directed to close the file.

---

[6] A recommendation for dismissal serves as sufficient notice of the Court's intent to dismiss and affords Plaintiff an opportunity to object. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (before dismissing an action *sua sponte*, the court must ensure that it employs a fair procedure, which generally includes "provid[ing] the plaintiff with notice of its intent to dismiss or an opportunity to respond") (citations and internal quotation marks omitted); *see also Shivers v. Int'l Bhd. of Elec. Workers Local Union*, 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment).

At Pensacola, Florida, this 11th day of April, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.